**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MANUEL JURADO-GUTIERREZ,

        Petitioner - Appellee,

v.

No. 97-1437

JOSEPH R. GREENE, District Director,
United States Immigration and
Naturalization Service, Executive Office
for Immigration Review and JOHN DOE,

        Respondents - Appellants.

----------------------------

AMERICAN IMMIGRATION
LAWYERS ASSOCIATION;
NATIONAL IMMIGRATION PROJECT
OF THE NATIONAL LAWYERS
GUILD; LAW PROFESSORS,

        Amici Curiae.

---

BENIGNO PALAGANAS-SUAREZ,

        Petitioner - Appellant,

v.

No. 98-1017

JOSEPH R. GREENE, District Director,
United States Immigration and
Naturalization Service, Denver, Colorado,

Respondent - Appellee.

----------------------------

NATIONAL IMMIGRATION PROJECT
OF THE NATIONAL LAWYERS
GUILD; AMERICAN IMMIGRATION
LAWYERS ASSOCIATION,

Amici Curiae.

---

ARNOLD DESMOND WILLIAMS,

Petitioner - Appellee,

v.

JOSEPH R. GREENE, District Director,
United States Immigration and
Naturalization Service, Denver, Colorado,

Respondent - Appellant.

----------------------------

LAW PROFESSORS; AMERICAN
IMMIGRATION LAWYERS
ASSOCIATION; NATIONAL
IMMIGRATION PROJECT OF THE
NATIONAL LAWYERS GUILD,

Amici Curiae.

---

URBANO DE JESUS DANIEL,

No. 98-1050

2

<table>
<tr><td>Petitioner - Appellee,</td><td>No. 98-1310</td></tr>
<tr><td>v.</td><td></td></tr>
<tr><td>JOSEPH R. GREENE, District Director,<br>United States Immigration and<br>Naturalization Service, Denver, Colorado,</td><td></td></tr>
<tr><td>Respondent - Appellant.</td><td></td></tr>
</table>

ORDER
Filed November 29, 1999

Before **TACHA**, **LUCERO**, Circuit Judges, and **COOK**,[1] District Judge.

Appellees' petition for rehearing is denied.

The suggestion for rehearing en banc was transmitted to all of the judges of the court who are in regular service as required by Fed. R. App. P. 35. As no member of the panel and no judge in regular active service on the court requested that the court be polled, the suggestion is also denied.

The first paragraph of the background section on appellee Williams, pages 11-12 of the slip opinion, is amended as follows: "Thirty-three year-old Arnold Desmond Williams, a citizen of Guyana, became a lawful permanent resident of the United States at age eleven. In 1983, he pled guilty to possession with intent

---

[1]The Honorable H. Dale Cook, Senior District Judge for the Northern District of Oklahoma, sitting by designation.

3

to sell marijuana in New York City. The INS placed Mr. Williams in deportation proceedings on or about September 1, 1995 based on his 1983 conviction after he applied to renew his resident alien card. After the passage of AEDPA, on April 25, 1996, Mr. Williams appeared before an immigration judge and admitted that he had a drug conviction and conceded his deportability. Mr. Williams requested that he be considered for a waiver of deportation under INA § 212(c). On June 25, 1996, he filed an application for discretionary relief."

In addition, footnote 11 is amended as follows: "Mr. Jurado-Gutierrez did not enter deportation proceedings until after the enactment of the AEDPA. Thus, the only retroactivity argument available to him pertains to his date of conviction. Moreover, although Mr. Daniel and Mr. Williams entered deportation proceedings prior to the enactment of the AEDPA, the only argument they asserted to the district court and to us on appeal is that AEDPA § 440(d) has an impermissible retroactive effect because they were convicted of their crimes prior to April 24, 1996. Thus, they have waived any other argument. See, e.g., Singleton v. Wulff, 428 U.S. 106, 120 (1976) ("It is a general rule . . . that a federal appellate court does not consider an issue not passed upon below."); City of Stilwell, Okla. v. Ozarks Rural Elec. Coop., 166 F.3d 1064, 1073-74 (10th Cir. 1999) (declining to consider an issue not raised below); State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (asserting that failure to raise an issue in the

4

opening brief waives the issue)."

A copy of the amended opinion is attached to this order.

Entered for the Court
PATRICK FISHER, Clerk of Court


by:    Keith Nelson
       Deputy Clerk

5

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 19 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MANUEL JURADO-GUTIERREZ,

        Petitioner - Appellee,

v.

JOSEPH R. GREENE, District Director,
United States Immigration and
Naturalization Service, Executive Office
for Immigration Review and JOHN DOE,

        Respondents - Appellants.

----------------------------

AMERICAN IMMIGRATION
LAWYERS ASSOCIATION;
NATIONAL IMMIGRATION PROJECT
OF THE NATIONAL LAWYERS
GUILD; LAW PROFESSORS,

        Amici Curiae.

No. 97-1437

---

BENIGNO PALAGANAS-SUAREZ,

        Petitioner - Appellant,

v.

JOSEPH R. GREENE, District Director,
United States Immigration and
Naturalization Service, Denver, Colorado,

No. 98-1017

Respondent - Appellee.

----------------------------

NATIONAL IMMIGRATION PROJECT
OF THE NATIONAL LAWYERS
GUILD; AMERICAN IMMIGRATION
LAWYERS ASSOCIATION,

Amici Curiae.

---

ARNOLD DESMOND WILLIAMS,

Petitioner - Appellee,

v.

JOSEPH R. GREENE, District Director,
United States Immigration and
Naturalization Service, Denver, Colorado,

Respondent - Appellant.

----------------------------

LAW PROFESSORS; AMERICAN
IMMIGRATION LAWYERS
ASSOCIATION; NATIONAL
IMMIGRATION PROJECT OF THE
NATIONAL LAWYERS GUILD,

Amici Curiae.

---

URBANO DE JESUS DANIEL,

No. 98-1050

Petitioner - Appellee,

v.

JOSEPH R. GREENE, District Director,
United States Immigration and
Naturalization Service, Denver, Colorado,

Respondent - Appellant.

No. 98-1310

**APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D. Ct. Nos. 97-Z-1756, 97-M-1724, 97-B-2329, & 97-B-1709)**

In appeal number 97-1437, *Jurado-Gutierrez v. Greene*:

David M. McConnell, Assistant Director, and Laura A. Smith, Trial Attorney (Lorri L. Shealy, Trial Attorney, with them on the briefs), Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., appearing for Respondents-Appellants.

Lucas Guttentag, ACLU Immigrants' Rights Project, San Francisco, California, and Sandra Saltrese-Miller, Boulder, Colorado (Lee Gelernt and Cecillia Wang, ACLU Immigrants' Rights Project, San Francisco, California, with them on the briefs), appearing for Petitioner-Appellee Jurado-Gutierrez.

Lenni B. Benson, New York Law School, New York, New York, filed an amici brief for Law Professors.

Marc Van Der Hout and Zachary Nightingale, Van Der Hout & Brigagliano, San Francisco, California, filed an amicus brief for the National Immigration Project of the National Lawyers Guild.

Nadine Wettstein, Tucson, Arizona, filed an amicus brief for the American Immigration Lawyers Association.

3

In appeal no. 98-1017, *Palaganas-Suarez v. Greene*:

Lucas Guttentag, ACLU Immigrants' Rights Project, San Francisco, California (Jim Salvator, Lafayette, Colorado, on the briefs), for Petitioner-Appellant Palaganas-Suarez.

Laura A. Smith, Trial Attorney (David M. McConnell, Assistant Director, with her on the brief), Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., appearing for Respondent-Appellee.

Marc Van Der Hout and Zachary Nightingale, Van Der Hout & Brigagliano, San Francisco, California, filed an amici brief for the National Immigration Project of the National Lawyers Guild and the American Immigration Lawyers Association.

In appeal number 98-1050, *Williams v. Greene*:

David M. McConnell, Assistant Director, and Laura A. Smith, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., appearing for Respondent-Appellant.

Lucas Guttentag, ACLU Immigrants' Rights Project, San Francisco, California, and Sandra P. Saltrese-Miller, Boulder, Colorado (Jim Salvator, Lafayette, Colorado, on the brief), for Petitioner-Appellee Williams.

Lenni B. Benson, New York Law School, New York, New York, filed an amici brief for Law Professors.

Nadine Wettstein, Tucson, Arizona, filed an amicus brief for the American Immigration Lawyers Association.

Marc Van Der Hout and Zachary Nightingale, Van Der Hout & Brigagliano, San Francisco, California, filed an amicus brief for the National Immigration Project of the National Lawyers Guild.

In appeal number 98-1310, *Daniel v. Greene*:

David M. McConnell, Assistant Director, and Laura A. Smith, Trial Attorney (Lorri L. Shealy, Trial Attorney, with them on the brief), Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., appearing for Respondent-Appellant.

Lucas Guttentag, ACLU Immigrants' Rights Project, San Francisco, California, and

Sandra P. Saltrese-Miller, Boulder, Colorado (Jim Salvator, Lafayette, Colorado, on the brief), for Petitioner-Appellee.

--------

Before **TACHA**, **LUCERO**, Circuit Judges, and **COOK**[1], District Judge.

--------

**TACHA**, Circuit Judge.

--------

We have consolidated for oral argument and decision four immigration cases presenting the same issues: (1) whether Congress abrogated, through enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), the district court's jurisdiction under the habeas corpus statute, 28 U.S.C. § 2241, to review petitioners' deportation orders; (2) whether AEDPA § 440(d) applies retroactively to cases in which an alien is convicted of an enumerated offense prior to its enactment; and (3) whether AEDPA § 440(d) violates the Equal Protection Clause.

Petitioners are four legal permanent residents who have had final orders of deportation entered against them because of past criminal convictions. They do not directly contest their deportability, but they seek from the Attorney General a discretionary waiver of their deportation order, as previously authorized by § 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C.A. § 1182(c) (West 1996 Supp.).

--------

[1]The Honorable H. Dale Cook, Senior District Judge for the Northern District of Oklahoma, sitting by designation.

5

Prior to enactment of the AEDPA, certain aliens found deportable due to criminal convictions could apply to the Attorney General for discretionary waiver of deportation. In AEDPA § 440(d) Congress significantly enlarged the category of offenses that would render an alien, including petitioners, ineligible to apply for discretionary relief.[1]

The immigration judges in each of these cases applied § 440(d) and found it precluded petitioners from applying for discretionary relief. After unsuccessfully appealing their final deportation orders to the Board of Immigration Appeals ("BIA"), petitioners filed habeas corpus petitions in federal district courts within the Tenth Circuit. Petitioners alleged that § 440(d) violates equal protection by prohibiting discretionary relief for certain criminal aliens in deportation proceedings but retaining such relief for criminal aliens in exclusion proceedings.[2] They also argued § 440(d) does not apply

---

[1]Under AEDPA § 440(d), codified at 8 U.S.C.A. § 1182(c) (West 1997 Supp.), aliens deportable due to the commission of an aggravated felony, a controlled substance offense (other than possession of a small amount of marijuana), certain firearms offenses, and multiple crimes of moral turpitude could not apply for a discretionary waiver of deportation. IIRIRA repealed this provision and replaced it with one now codified at 8 U.S.C.A. § 1229b (West 1999). The new IIRIRA provision applies only to aliens ordered deported after April 1, 1997. See Mayers v. INS, 175 F.3d 1289, 1293 n.3 (11th Cir. 1999). Because each of the petitioners were ordered deported prior to that date, the new IIRIRA provision does not apply here.

[2]Prior to IIRIRA, the law distinguished between "deporting" resident aliens who were currently in the United States and "excluding" resident aliens who left the country for a short time and then sought re-entry. See 8 U.S.C.A. § 1182 (West 1996 Supp.) (delineating excludable aliens); id. § 1251 (West 1996 Supp.) (delineating deportable aliens). IIRIRA eliminated this distinction and classified both actions as "removal" procedures. See id. § 1229a (West 1999); United States v. Wittgenstein, 163 F.3d 1164, 1171 n.3 (10th Cir. 1998), cert. denied, 67 U.S.L.W. 3757 (U.S. June 14, 1999) (No. 98-9362).

retroactively to their deportation proceedings. Each of the lower courts took jurisdiction under 28 U.S.C. § 2241 and addressed the merits of the habeas corpus petition. The district courts found that AEDPA § 440(d) applied to petitioner's case and held that § 440(d) violated equal protection. However, they differed as to the appropriate remedy.

We take jurisdiction under 28 U.S.C. §§ 1291 and 2253. We hold that the district courts had jurisdiction to review petitioners' claims under 28 U.S.C. § 2241. We further hold that AEDPA § 440(d) properly applies to petitioners and does not violate petitioners' equal protection rights.

## I. Background

### A. Petitioner-Appellee Manuel Jurado-Gutierrez

Mr. Jurado-Gutierrez, a citizen of Mexico, has resided as a lawful permanent resident in the United States since 1988. In 1987, he married a United States citizen from whom he is now divorced. He and his ex-wife have an eleven year-old child who lives with her mother. In December 1995, Mr. Jurado-Gutierrez pled guilty to possession with intent to distribute a controlled substance. The court sentenced petitioner to four years imprisonment, followed by three years of parole. In September 1996, prior to the completion of his sentence, the Immigration and Naturalization Service ("INS") took Mr. Jurado-Gutierrez into custody and instituted deportation proceedings based upon his conviction for a controlled substance violation, an aggravated felony. At a hearing on December 19, 1996, Mr. Jurado-Gutierrez admitted his conviction, and the immigration

7

judge found him deportable.

After Mr. Jurado-Gutierrez pled guilty, but prior to the deportation proceedings against him, Congress enacted the AEDPA. As noted above, AEDPA § 440(d) amended the INA to eliminate discretionary relief from deportation for aliens convicted of most drug offenses. Mr. Jurado-Gutierrez argued to the immigration judge that application of AEDPA § 440(d) is impermissibly retroactive because his conviction occurred prior to its enactment. The court rejected this argument, and the BIA affirmed.

Mr. Jurado-Gutierrez petitioned for a writ of habeas corpus in the district court. Initially, he argued only that AEDPA § 440(d) does not apply retroactively. At a second hearing, he further argued that § 440(d) violates Equal Protection and the Due Process Clause of the Fifth Amendment. The government moved to dismiss the petition, arguing that Congress eliminated the district court's subject matter jurisdiction when it enacted the AEDPA and IIRIRA. It further asserted that if the district court had jurisdiction, § 440(d) properly applied and did not violate the Equal Protection Clause.

The district court found in favor of petitioner. It held that it had jurisdiction under 28 U.S.C. § 2241 to hear petitioner's equal protection claim, an alleged substantial constitutional violation, and it applied § 440(d). On the merits, the court held that no rational basis existed to allow excludable aliens to apply for discretionary relief while barring applications of deportable aliens. The district court ordered a hearing to adjudicate Mr. Jurado-Gutierrez's application for waiver of deportation. The government

8

appealed the decision to this court.

## B. Petitioner-Appellant Benigno Palaganas-Suarez

Mr. Palaganas-Suarez, a twenty-eight year-old citizen of the Phillippines, became a lawful permanent resident of the United States at age fourteen. He is married to a United States citizen and has four children. On June 28, 1988, Mr. Palaganas-Suarez pled guilty to assault in the second degree. On August 15, 1996, he pled guilty to theft. As a result of these convictions involving crimes of moral turpitude, the INS placed Mr. Palaganas-Suarez in deportation proceedings in October 1996, after enactment of the AEDPA and IIRIRA. On November 7, 1997, after the IIRIRA's effective date, the INS further charged him with deportability under amended INA § 241(a)(2)(iii) because the statute now considers his crimes aggravated felonies. Petitioner contested deportation and requested permission to apply for discretionary relief under former INA § 212(c). On January 8, 1997, the immigration judge found that under the AEDPA and IIRIRA petitioner could not apply for a waiver because he had committed two crimes of moral turpitude. Petitioner appealed to the BIA, arguing that INA § 212(c), as amended by AEDPA § 440(d), violates equal protection because it treats deportable and excludable aliens differently. The BIA affirmed but stated that it could not rule on the equal protection claim.

Mr. Palaganas-Suarez filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in federal district court on August 11, 1997. He sought review of his final

9

deportation order and alleged an equal protection violation.  The district court "assumed that courts can provide relief from deportation proceedings upon a showing of grave constitutional error or a fundamental miscarriage of justice," Dist. Ct. Mem. Op. and Order at 2, but found none in this case.  It held that construing § 440(d) to treat aliens in exclusion and deportation proceedings differently would violate equal protection.  Instead of striking the statute, however, the court found that the BIA should have construed the statute as precluding discretionary relief to aliens in both types of proceedings.  It therefore found that no violation of Mr. Palaganas-Suarez's rights occurred because the proper remedy bars both excludable and deportable aliens from applying for discretionary relief.  Mr. Palaganas-Suarez appealed the equal protection ruling only.

## C.  Petitioner-Appellee Urbano De Jesus Daniel

Mr. Daniel, a citizen of Mexico, entered the United States in 1986 and became a lawful permanent resident in 1990.  In February 1995, Mr. Daniel pled guilty to use of a controlled substance, and the court sentenced him to four years in prison.  In February 1996, the INS initiated deportation proceedings against Mr. Daniel based on this conviction.  After passage of the AEDPA and IIRIRA, Mr. Daniel appeared at a hearing before an immigration judge and contested his deportability.  He had previously requested leave to apply for a waiver of deportation under former INA § 212(c).  On December 4, 1996, the immigration judge ordered him deported and found him ineligible for INA § 212(c) discretionary relief pursuant to AEDPA § 440(d).  Mr. Daniel appealed his case,

10

including an argument that § 212(c), as amended, violates equal protection for treating identically situated excludable and deportable persons differently. The BIA affirmed, noting that it could not address the equal protection argument.

Mr. Daniel filed a petition for writ of habeas corpus in federal district court on August 8, 1997. He sought reversal of his deportation order, arguing that the immigration courts impermissibly had applied AEDPA § 440(d) retroactively and that it violates the Equal Protection Clause. The district court found that it had jurisdiction under 28 U.S.C. § 2241 because Mr. Daniel's petition raised federal constitutional issues. It rejected petitioner's retroactivity claim but found that § 440(d) violates his equal protection rights because excludable aliens could apply for discretionary relief while he, as a deportable alien, could not. The court found no rational basis for such a distinction and ordered respondents to adjudicate Mr. Daniel's application for a discretionary waiver. The government appealed.

**D. Petitioner-Appellee Arnold Desmond Williams**

Thirty-three year-old Arnold Desmond Williams, a citizen of Guyana, became a lawful permanent resident of the United States at age eleven. In 1983, he pled guilty to possession with intent to sell marijuana in New York City. The INS placed Mr. Williams in deportation proceedings on or about September 1, 1995 based on his 1983 conviction after he applied to renew his resident alien card. After the passage of AEDPA, on April 25, 1996, Mr. Williams appeared before an immigration judge and admitted that he had a

11

drug conviction and conceded his deportability. Mr. Williams requested that he be considered for a waiver of deportation under INA § 212(c). On June 25, 1996, he filed an application for discretionary relief.

On December 3, 1996, after a hearing, the immigration judge denied Mr. Williams' application for a § 212(c) waiver because AEDPA § 440(d) barred such relief for deportable aliens. Mr. Williams appealed to the BIA, arguing that retroactive application of the AEDPA was improper and that his ineligibility for discretionary relief violated his equal protection rights. The BIA affirmed, stating that it could not decide his equal protection claim.

Mr. Williams filed a petition for a writ of habeas corpus on October 28, 1997, raising retroactivity and equal protection claims. The district court found that it had jurisdiction under 28 U.S.C. § 2241 because Mr. Williams' equal protection claim constituted a colorable, substantial constitutional violation. Although the court rejected Mr. Williams' retroactivity argument, it found a violation of his equal protection rights and ordered a hearing to determine the appropriateness of discretionary relief. The government appealed.

### III. Jurisdiction

As a threshold matter, these cases present the question of whether federal courts have jurisdiction under 28 U.S.C. § 2241 to review a final deportation order after the

1996 AEDPA enactments.[3]  According to the government, the district courts lacked

jurisdiction because the AEDPA removed federal court jurisdiction to hear habeas claims

concerning final deportation orders.  Resolution of this question requires a brief

description of the relevant 1996 amendments.

## A.  Statutory Background

Congress dramatically altered the judicial remedies available to resident aliens

who had committed specified crimes by enacting, on April 24, 1996, the AEDPA, Pub. L.

No. 104-132, 110 Stat. 1214 (1996), and, on September 30, 1996, the IIRIRA, Pub. L.

No. 104-208, 110 Stat. 3009 (1996), as amended by the Act of Oct. 11, 1996, Pub. L. No.

104-302, 110 Stat. 3656.  These statutes reformed the INA's provisions relating to

judicial review, as well as many of its substantive provisions.  Under the old INA, an

alien could seek direct judicial review of a final deportation order only in the appropriate

circuit court of appeals.  See 8 U.S.C.A. § 1105a(a) (West 1996 Supp.).  When Congress

established the exclusive circuit court review framework in 1961, it also explicitly

---

[3]Other circuits have recently addressed this issue.  See Mayers v. INS, 175 F.3d 1289, 1301 (11th Cir. 1999) (holding that district courts continued to have jurisdiction under 28 U.S.C. § 2241); Sandoval v. Reno, 166 F.3d 225, 238 (3d Cir. 1999) (same); LaGuerre v. Reno, 164 F.3d 1035, 1040 (7th Cir. 1998) (holding that district court did not have habeas corpus jurisdiction over aliens convicted of enumerated crimes); Henderson v. INS, 157 F.3d 106, 122 (2d Cir. 1998), cert. denied, 119 S. Ct. 1141 (1999) (habeas jurisdiction retained); Goncalves v. Reno, 144 F.3d 110, 126 (1st Cir. 1998), cert. denied, 119 S. Ct. 1140 (1999) (same); Magana-Pizano v. INS, 152 F.3d 1213, 1216 (9th Cir. 1998), cert. granted & judgment vacated, 119 S. Ct. 1137 (1999) (holding that district court maintained habeas corpus jurisdiction when alien had no opportunity for direct review).

preserved the right to habeas corpus review. INA § 106(a)(9), later renumbered § 106(a)(10), stated that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." Id. § 1105a(a)(10) (West 1996 Supp.).

The enactment of the AEDPA and IIRIRA wrought significant changes in federal court jurisdiction to hear claims brought by a resident alien convicted of an offense enumerated in the statute. To begin with, Congress revoked the specific preservation of habeas corpus jurisdiction contained in INA § 106(a)(10). AEDPA § 401(e) states:

> (e) ELIMINATION OF CUSTODY REVIEW BY HABEAS CORPUS. --
> Section 106(a) of the Immigration and Nationality Act (8 U.S.C. 1105a(a))
> is amended --
> . . .
> (3) by striking paragraph (10).

110 Stat. at 1268. Congress replaced that provision with AEDPA § 440(a), which reads:

> Any final order of deportation against an alien who is deportable by reason
> of having committed a criminal offense covered in section
> [1251](a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section
> [1251](a)(2)(A)(ii) for which both predicate offenses are covered by section
> [1251](a)(2)(A)(i) shall not be subject to review by any court.

Id. at 1276-77 (codified at 8 U.S.C.A. § 1105a(a)(10) (West 1997 Supp.)). This provision applies to cases pending on or after the April 24, 1996 date of the AEDPA enactment. See Fernandez v. INS, 113 F.3d 1151, 1153 (10th Cir. 1997).

On September 30, 1996, Congress made further changes to the immigration laws by enacting the IIRIRA. Among other things, Congress comprehensively revamped the

14

judicial review structure which existed in INA § 106. Although most IIRIRA provisions apply only to proceedings commenced on or after its April 1, 1997 effective date, two important jurisdictional provisions potentially could impact petitioners in this case. First, IIRIRA contains transitional rules that apply to cases pending prior to April 1, 1997. In particular, IIRIRA § 309(c)(4)(G) applies to aliens against whom deportation proceedings had commenced prior to April 1, 1997, but against whom a final deportation order issued after October 30, 1996. See, e.g., Berehe v. INS, 114 F.3d 159, 161 (10th Cir. 1997); Sandoval v. Reno, 166 F.3d 225, 229 (3d Cir. 1999). The transitional rules prohibit appeals of deportation orders based on certain underlying criminal offenses. IIRIRA § 309(c)(4)(G), reprinted in 8 U.S.C.A. § 1101 (West 1999), historical and statutory notes, states:

> there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in section 212(a)(2) or section 241(a)(2)(A)(iii), (B), (C), or (D) of the Immigration and Nationality Act (as in effect as of the date of the enactment of this Act), or any offense covered by section 241(a)(2)(A)(ii) of such Act (as in effect on such date) for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 241(a)(2)(A)(i) of such Act (as so in effect).

The criminal convictions which provide the basis for the petitioners' deportability fall under these listed provisions, and petitioners' cases fall within the time frame established by the transitional rules.

INA § 242(g), added by IIRIRA § 306(a), places additional limitations on an alien's ability to appeal deportation actions. INA § 242(g) states:

15

EXCLUSIVE JURISDICTION. - Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this act.

8 U.S.C.A. § 1252(g) (West 1999). Congress made this provision applicable "without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings." See IIRIRA § 306(c)(1), reprinted in 8 U.S.C.A. § 1252 (West 1999), historical and statutory notes.

**B. Habeas Corpus**

According to the government, the foregoing provisions eliminated federal court jurisdiction to hear habeas corpus petitions regarding petitioners' deportation proceedings.[4] We begin by noting that recent Supreme Court guidance forecloses any reliance on INA § 242(g) (codified at 8 U.S.C.A. § 1252(g)).

In Reno v. American-Arab Anti-Discrimination Comm., __ U.S.__, 119 S. Ct. 936, 943-45 (1999) ("AAADC"), the Supreme Court rejected the view that 8 U.S.C.A. §

---

[4]The government concedes that federal courts must have jurisdiction to hear claims of substantial constitutional error. The government believes circuit courts retain this jurisdiction on direct appeal under AEDPA § 440(a). In Fernandez v. INS, 113 F.3d 1151, 1153, 1155 (10th Cir. 1997), we recognized that we may not hear direct appeals of deportation orders based on underlying offenses enumerated in AEDPA § 440(a), but we expressly left open the question whether we would take jurisdiction of substantial constitutional questions on direct review or on habeas, despite the broad language in these statutes. In Wittgenstein v. INS, 124 F.3d 1244, 1245 (10th Cir. 1997), we assumed that federal courts retained some sort of jurisdiction to hear claims of substantial constitutional errors.

1252(g) broadly covered almost all deportation claims. It held that § 1252(g) applies to bar judicial review in only three discrete instances: when the Attorney General decides or acts to "commence proceedings, adjudicate cases, or execute removal orders" against an alien. See id. at 943. The court noted that "[i]t is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings" and recognized:

> There are of course many other decisions or actions that may be part of the deportation process – such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order.

Id.

Here, petitioners ask us to review a final deportation order, see Foti v. INS, 375 U.S. 217, 222-23 (1963),[5] not interfere with the Attorney General's decision to commence proceedings, adjudicate cases, or execute a removal order. The immigration judges found that the AEDPA barred petitioners from seeking discretionary relief under § 212(c) because of their criminal convictions. Although they did not decide the merits of petitioners' request for waiver, arguments pertaining to the availability of discretionary

---

[5]In Foti, the Supreme Court addressed whether a final order of deportation encompasses the Attorney General's discretionary refusal to grant a suspension of deportation. See 375 U.S. at 221. The Court held that final orders of deportation were not limited to adjudications of deportability, see id. at 227-28, but also included the decision regarding "discretionary relief, made during the same proceedings in which deportability is determined, which effectively terminates the proceedings," Id. at 224.

17

relief occurred in the context of deportation orders, and the immigration courts noted the statutory bar when rendering their final decisions. These petitions therefore constitute a request to review the immigration courts' decisions "to include various provisions in the final order that is the product of the adjudication." AAADC, 119 S. Ct. at 943; see also Mayers v. INS, 175 F.3d 1289, 1296-97 (11th Cir. 1999) (finding § 1252(g) does not apply in analogous situation). Thus, 8 U.S.C.A. § 1252(g) has no application to these cases.

Hence, to determine whether the district court had jurisdiction to hear these habeas petitions, we must address the impact AEDPA § 401(e), AEDPA § 440(a), and IIRIRA § 309(c)(4)(G) had on the general habeas corpus statute, 28 U.S.C. § 2241. Prior to the passage of the AEDPA and IIRIRA, INA § 106(a) stated that its provisions comprised the "sole and exclusive procedure" for judicial review, see 8 U.S.C.A. § 1105a(a) (West 1996 Supp.), with an exception that habeas corpus review was still available pursuant to INA § 106(a)(10), see id. § 1105a(a)(10). Despite the "sole and exclusive" language of INA § 106(a), INA § 106(a)(10) did not provide the sole method through which an alien could gain habeas corpus review in district court because traditional habeas corpus review under 28 U.S.C. § 2241 remained as an independent, alternative option. See Mayers, 175 F.3d at 1298-1300; Goncalves v. Reno, 144 F.3d 110, 121 (1st Cir. 1998) (asserting that INA § 106(a)(10) provided supplemental collateral remedy and that aliens without other recourse could obtain traditional habeas corpus review). The Tenth Circuit frequently

18

recognized the district court's jurisdiction to hear an alien's habeas corpus claim brought pursuant to 28 U.S.C. § 2241 during the period from 1961, when Congress enacted INA § 106(a)(10), through 1996. See, e.g., Walford v. INS, 48 F.3d 477, 477-78 (10th Cir. 1995) (recognizing jurisdiction under § 2241 to consider habeas petition of incarcerated alien against whom a final order of deportation had issued); Rodriguez-Fernandez v. Wilkinson, 654 F.2d 1382, 1390 (10th Cir. 1981) (noting that an alien in custody may test his or her "detention by writ of habeas corpus pursuant to 8 U.S.C. § 1105a(a)(9) [later renumbered (a)(10)] or 28 U.S.C. § 2241"). Because INA § 106(a)(10) and § 2241 existed as independent alternatives, the explicit repeal of one does not necessarily eradicate relief under the other.

AEDPA § 401(e) specifically deleted INA § 106(a)(10). However, it made no mention in its text regarding habeas corpus review traditionally available under § 2241. Therefore, AEDPA § 401(e) in eliminating INA § 106(a)(10) did not strike a fatal blow to traditional habeas corpus review under § 2241, an independent statute. Acting alone, AEDPA § 401(e) did precisely what it stated – it revoked the avenue of habeas review available under INA § 106(a)(10). See Mayers, 175 F.3d at 1299-1300; Sandoval v. Reno, 166 F.3d 225, 234-35 (3d Cir. 1999); Goncalves, 144 F.3d at 121.

We must next determine whether the language of AEDPA § 440(a) and IIRIRA § 309(c)(4)(G) accomplished what § 401(e) failed to do. AEDPA § 440(a) declares that "[a]ny final order of deportation entered against an alien who is deportable by reason of

19

having committed a criminal offense . . . shall not be subject to review by any court." Similarly, IIRIRA § 309(c)(4)(G) mandates that "[t]here shall be no appeal permitted in the case of an alien who is . . . deportable by reason of having committed a criminal offense . . . ." Neither of these provisions mentions habeas review under § 2241, nor on their face contemplates the revocation of that traditional review mechanism. We find the lack of any mention of § 2241 habeas review in the plain language of the statute, combined with the long historical precedent surrounding habeas corpus review in immigration cases, establishes that traditional habeas review under § 2241 survived the enactment of AEDPA § 440(d) and IIRIRA § 309(c).

"It can be strongly presumed that Congress will specifically address language on the statute books that it wishes to change," United States v. Fausto, 484 U.S. 439, 453 (1988). 28 U.S.C. § 2241 traces its lineage in this country back to the Judiciary Act of 1789, see Fay v. Noia, 372 U.S. 391, 400 & n.9 (1963), and the courts have applied it or its predecessor in the immigration context for over a century.[6] Nevertheless, Congress in the AEDPA and IIRIRA did not specifically address the relevant habeas corpus language.

In addition, Congress' limitation on "review" and "appeal" in the 1996 statutes is insufficient to preclude habeas. As the Third Circuit pointed out, "in the immigration

---

[6]Section 2241 habeas jurisdiction over detention of aliens dates back to at least the Nineteenth Century. The Supreme Court expressly recognized such jurisdiction in United States v. Jung Ah Lung, 124 U.S. 621, 627-28 (1888), and it consistently reaffirmed this jurisdiction prior to 1961. See Sandoval, 166 F.3d at 233-34 (tracing history of relevant habeas jurisdiction in the Twentieth Century).

context, the Court has historically drawn a sharp distinction between 'judicial review' -- meaning APA review -- and the court's power to entertain petitions for writs of habeas corpus." Sandoval, 166 F.3d at 235 (discussing Heikkila v. Barber, 345 U.S. 229, 235-36 (1953)); see also Mayers, 175 F.3d at 1299 n.14 (same). We can certainly presume that Congress knew the difference between direct judicial review and collateral relief through filing a habeas corpus petition. See Sandoval, 166 F.3d at 235. In fact, we generally assume Congress knows the law and legislates in light of federal court precedent. See Cannon v. University of Chicago, 441 U.S. 677, 696-97 (1979). Here, that precedent includes a long history of recognizing habeas jurisdiction for aliens in deportation proceedings, even when no direct review existed. See, e.g., Sandoval, 166 F.3d at 233-34. With that precedent in mind, Congress could easily have inserted a provision explicitly pertaining to traditional habeas corpus review under 28 U.S.C. § 2241. It failed to do so. In light of the foregoing, we hold that AEDPA § 440(a) and IIRIRA 309(c)(4)(G) foreclose direct judicial review but leave habeas jurisdiction under 28 U.S.C. § 2241 intact. See Mayers, 175 F.3d at 1299-1300; Sandoval, 166 F.3d at 235; Jean-Baptiste v. Reno, 144 F.3d 212, 220 (2d Cir. 1998); Goncalves, 144 F.3d at 121. But see LaGuerre v. Reno, 164 F.3d 1035, 1040 (7th Cir. 1998) (relying on Congressional intent to find that Congress repealed all habeas corpus jurisdiction for affected criminal aliens and reading into AEDPA § 440(a) an exception to allow aliens to bring serious

constitutional claims on direct review).[7]

In sum, none of the statutes that we have before us in these cases, singularly or in combination, eliminates or otherwise alters habeas review available under 28 U.S.C. § 2241. Accordingly, the district courts in these cases properly took jurisdiction to hear petitioners' claims that they are held "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241. Because we hold that petitioners in these cases may file a petition for writ of habeas corpus under § 2241, we need not decide the constitutional arguments that are raised if Congress abolishes habeas corpus review entirely.[8]

## IV. Retroactivity

Having determined that the district court had jurisdiction to hear petitioners'

---

[7]This conclusion does not change even if one views former INA § 106(a)(10), which explicitly preserved habeas, as simply acknowledging that district courts continued to have traditional habeas corpus jurisdiction under 28 U.S.C. § 2241. The Third Circuit interpreted § 106(a)(10) in this manner, see Sandoval, 155 F.3d at 234, and one case in this circuit suggests such an interpretation, see Galaviz-Medina v. Wooten, 27 F.3d 487, 489-91 (10th Cir. 1994) (evaluating petition brought under 28 U.S.C. § 2241 in light of the judicial review framework established by INA § 106(a)). Even if § 106(a)(10) explicitly preserved habeas when it was enacted in 1961, the fact remains that § 2241 habeas existed for aliens in deportation proceedings for many years prior to this provision. Given this history, we cannot find the repeal of § 106(a)(10) sufficient to eliminate what it never originally authorized – § 2241 habeas review. See Sandoval, 166 F.3d at 234-35.

[8]The cases before us do not involve current 8 U.S.C.A. § 1252 (West 1999), the IIRIRA provision setting forth the judicial review structure for removal proceedings brought after April 1, 1997. We therefore express no opinion regarding whether traditional habeas corpus review remains under the current framework.

habeas corpus claims, we turn to the argument that AEDPA § 440(d) does not apply to aliens convicted prior to April 24, 1996.[9] Prior to the enactment of the AEDPA, INA § 212(c) permitted aliens other than those convicted of crimes such as aggravated felonies or crimes of moral turpitude to apply to the Attorney General for a waiver of deportation. AEDPA § 440(d) amended that section, adding drug crimes such as those committed by Mr. Williams, Mr. Daniel, and Mr. Jurado-Gutierrez, to the list of deportable offenses making an alien ineligible for INA § 212(c) discretionary relief. These three petitioners argue that the immigration judge, BIA, and district courts impermissibly applied AEDPA § 440(d) retroactively to find that § 212(c), as amended, barred them from seeking discretionary relief.[10] They assert that § 440(d) should apply only to those aliens whose criminal convictions occurred after its enactment.[11]

---

[9]We emphasize that we do not decide the question presented to our sister circuits in similar cases. The First, Second, Third, and Eleventh Circuits have found that AEDPA § 440(d) does not apply to cases pending at the time of the AEDPA's enactment. See Mayers, 175 F.3d at 1304; Sandoval, 166 F.3d at 242; Henderson, 157 F.3d at 128; Goncalves, 144 F.3d at 126. We confront a significantly different issue. In the cases before us, petitioners argue that AEDPA § 440(d) cannot apply to anyone who has a criminal conviction that predates April 24, 1996, regardless of whether or not they had already entered deportation proceedings or applied for discretionary relief. See Henderson, 157 F.3d at 128 n.28 (expressly declining to address the issue facing this court).

[10]Because Mr. Palaganos-Suarez was convicted of two crimes involving moral turpitude, former § 212(c) barred him from seeking discretionary relief. Therefore, his appeal does not involve the issue of whether § 440(d) applies retroactively.

[11]Mr. Jurado-Gutierrez did not enter deportation proceedings until after the enactment of the AEDPA. Thus, the only retroactivity argument available to him pertains to his date of conviction. Moreover, although Mr. Daniel and Mr. Williams entered

23

## A. Agency Deference

As a threshold matter, we address the government's contention that the Attorney General's decision in In re Soriano, (Feb. 21, 1997) (Soriano II), reprinted in Bender's Immigration Bulletin, Vol. 2, No. 6, March 15, 1997, at 204, deserves deference under Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). In Soriano II, the Attorney General decided that AEDPA § 440(d) applied to deportation cases pending on the date of the AEDPA's enactment.[12]  Generally, absent a direct expression of congressional intent, we must defer to an agency's reasonable interpretation of its governing statute.  See id. at 843-44.  However, it is not clear that deference is appropriate here.  "Chevron appears to speak to statutory interpretation in those instances where Congress delegated rule-making power to an agency and thereby sought to rely on agency expertise in the formulation of substantive policy."  Sandoval, 166 F.3d at 239 (citing Chevron, 467 U.S. at 865); see also Mayers, 175 F.3d at 1302; Goncalves, 144

_____

deportation proceedings prior to the enactment of the AEDPA, the only argument they asserted to the district court and to us on appeal is that AEDPA § 440(d) has an impermissible retroactive effect because they were convicted of their crimes prior to April 24, 1996.  Thus, they have waived any other argument.  See, e.g., Singleton v. Wulff, 428 U.S. 106, 120 (1976) ("It is a general rule . . . that a federal appellate court does not consider an issue not passed upon below."); City of Stilwell, Okla. v. Ozarks Rural Elec. Coop., 166 F.3d 1064, 1073-74 (10th Cir. 1999) (declining to consider an issue not raised below); State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (asserting that failure to raise an issue in the opening brief waives the issue).

[12]Because the applications for relief were not pending in the cases before us, Soriano II does not directly address the situation we confront here.  However, because that ruling necessarily implies that AEDPA § 440(d) applies to criminal convictions predating its enactment, we address the Chevron issue.

F.3d at 127. Determining the statute's temporal reach does not involve any special agency expertise. See Sandoval, 166 F.3d at 239; Goncalves, 144 F.3d at 127. Rather, we consider the question of whether AEDPA § 440(d) applies retroactively to be a "pure question of statutory construction for the courts to decide." INS v. Cardoza-Fonseca, 480 U.S. 421, 446 (1987); see also Mayers, 175 F.3d at 1302; Sandoval, 166 F.3d at 239-40; Goncalves, 144 F.3d at 127. Therefore, we will determine, without affording any deference to the Attorney General, whether AEDPA § 440(d) appropriately applies to cases in which the criminal convictions, but not the deportation proceedings, occurred prior to passage of the AEDPA.

## B. Retroactivity

In determining when to apply a change in the law to past conduct, we face two "seemingly contradictory statements" of statutory construction. See Landgraf v. U.S.I. Film Products, 511 U.S. 255, 264 (1994). "The first is the rule that 'a court is to apply the law in effect at the time it renders its decision,'" id. (quoting Bradley v. School Bd. of Richmond, 416 U.S. 696, 711 (1974)), and the second is that the law generally disfavors retroactive application of new statutes, absent clear statutory language to the contrary, see id. In Landgraf and Lindh v. Murphy, __U.S.__,117 S. Ct. 2059 (1997), the Supreme Court resolved this apparent tension in the law and clarified when the different maxims of statutory construction apply.

The presumption against retroactivity "remains the appropriate default rule."

25

Landgraf, 511 U.S. at 272.  Reading Landgraf and Lindh in tandem, we have stated the Court "established a three-part test for determining whether a statute may apply retroactively."  Craig v. Eberly, 164 F.3d 490, 494 (10th Cir. 1998); see also Federal Deposit Ins. Corp. v. UMIC, Inc., 136 F.3d 1375, 1385-86 (10th Cir. 1998), cert. denied, 119 S. Ct. 404 (1998).  "First, the court must determine 'whether Congress has expressly prescribed the statute's proper reach.'"  Craig, 164 F.3d at 494 (quoting Landgraf, 511 U.S. at 280).  Second, if Congress has not expressly addressed the question, we employ the "normal rules of statutory construction to ascertain the statute's temporal scope."  Id.; see also Lindh, 117 S. Ct. at 2063.  Finally, if the court cannot ascertain congressional intent, we consider whether the statute has a retroactive effect.  See Landgraf, 511 U.S. at 280; Craig, 164 F.3d at 494.  If a retroactive effect exists, "it triggers the traditional judicial presumption against retroactivity and the new law will not be applied."  Craig, 164 F.3d at 494 (citing Landgraf, 511 U.S, at 280).

A provision has a retroactive effect if it, for example, "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed."  Landgraf, 511 U.S. at 280; see also Hughes Aircraft Co. v. United States ex. rel. Schumer, ___ U.S. ___, 117 S. Ct. 1871, 1876 (1997) (stating that the above list is illustrative but not exhaustive).  However, "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations.  Rather, the court

26

must ask whether the new provision attaches new legal consequences to events completed before its enactment." Landgraf, 511 U.S. at 269-70 (internal citations omitted). The Supreme Court has emphasized that this is a functional test.

> Any test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity. However, retroactivity is a matter on which judges tend to have 'sound . . . instinct[s],' see Danforth v. Groton Water Co., 178 Mass. 472, 476, 59 N.E. 1033, 1034 (1901) (Holmes, J.), and familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance.

Id. at 270.

The Court in Landgraf further elaborated that the presumption against retroactivity did not apply in certain circumstances. For example, "[w]hen the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive," id. at 273, because "'relief by injunction operates *in futuro*, and . . . plaintiff ha[s] no 'vested right' in the decree entered by the trial court," id. at 274 (quoting American Steel Foundries v. Tri-City Central Trades Council, 257 U.S. 184, 201 (1921)). Courts also apply intervening statutes that affect jurisdiction and procedure on the rationale that such changes do not take away a substantive right or upset settled expectations. See id. at 274-75.

## C. Application

The parties agree that Congress did not expressly mandate retroactive or prospective application of AEDPA § 440(d). Proceeding to the second step, petitioners

argue that the history and structure of the AEDPA show that Congress did not intend §

440(d) to apply to cases in which the alien's criminal conviction occurred prior to April

24, 1996. They argue that numerous AEDPA immigration provisions contain explicit

retroactivity language, while AEDPA § 440(d) is silent. Thus, they assert we can draw a

"negative implication" such as that found by the Supreme Court in Lindh and infer

congressional intent to apply § 440(d) prospectively to those whose criminal convictions

occurred after passage of the AEDPA.

In addressing whether AEDPA § 440(d) applies to cases *pending* at the time of the

enactment, the First, Second, Third, and Eleventh Circuits accepted similar arguments.

See Mayers, 175 F.3d at 1302-04; Sandoval, 166 F.3d at 240-41; Henderson, 157 F.3d at

129-30; Goncalves, 144 F.3d at 128-31. Relying primarily upon AEDPA § 413(g) and

421(b), these courts drew a negative implication against applying § 440(d) to pending

cases. AEDPA § 413, entitled "Denial of Other Relief for Alien Terrorists," bars alien

terrorists from relief previously available to them at the agency's discretion. See, e.g.,

Pub. L. No. 104-132, 110 Stat. 1214, 1269 (1996); Sandoval, 166 F.3d at 241. That

section contains an explicit "effective date" provision, AEDPA § 413(g), providing:

> The amendments made by this section shall take effect on the date of the
> enactment of this Act and shall apply to applications filed before, on, or
> after such a date if final action has not been taken on them before such
> date.

110 Stat. at 1269. Similarly, AEDPA § 421 explicitly made a restriction on the

discretionary relief asylum applicants could seek applicable "to asylum determinations

28

made on or after the date of enactment." <u>See</u> 110 Stat. at 1270. Thus, these courts, relying on one or both of the provisions above, found that Congress expected, unless it explicitly stated otherwise, that the new AEDPA immigration restrictions would only apply prospectively to applications filed after April 24, 1996. <u>See</u> <u>Mayers</u>, 175 F.3d at 1302-03; <u>Sandoval</u>, 166 F.3d at 241; <u>Henderson</u>, 157 F.3d at 129-30; <u>Goncalves</u>, 144 F.3d at 131.

This analysis, however, overlooks other immigration sections of the AEDPA that contain prospective "effective date" provisions. For example, AEDPA § 435, entitled "Expansion of Criteria for Deportation for Crimes of Moral Turpitude" applies expressly to "aliens against whom deportation proceedings are initiated after the date of the enactment of this Act." 110 Stat. at 1275. Likewise, AEDPA § 441, limiting collateral attacks by criminal aliens on their underlying deportation orders, expressly provides that it will "apply to criminal proceedings initiated after the date of enactment of this Act." 110 Stat. at 1279. As one court has noted, "Because both of these sections concern criminal aliens, and contain provisions specifying that they apply prospectively only, the absence of such a provision with regard to section 440(d) could reasonably be construed to signal that section 440(d) applies to . . . prior convictions."[13] <u>De Sousa v. Reno</u>, 30 F. Supp. 2d

---

[13]The concurrence disagrees with our use of AEDPA §§ 435 and 441 to support our finding of ambiguity. Although §§ 435 and 441 do not involve discretionary relief, they do pertain to criminal aliens and have express provisions declaring they should apply prospectively. In contrast, §§ 413 and 421 concern discretionary decisions made by the attorney general, but they do not refer to criminal aliens. The AEDPA contains no

29

844, 853 (E.D. Pa. 1998).

Moreover, AEDPA § 440(f), in close proximity to § 440(d), states:

EFFECTIVE DATE.-- The amendments made by subsection (e) shall apply to convictions entered on or after the date of the enactment of this Act, except that the amendment made by subsection (e)(3) shall take effect as if included in the enactment of section 222 of the Immigration and Nationality Technical Corrections Act of 1994.

110 Stat. at 1278. As the De Sousa court recognized, one can draw a reasonable negative implication from § 440(f) that the amendments in § 440, with the exception of § 440(e), apply to criminal convictions entered before enactment. See De Sousa, 30 F. Supp. 2d at 853.

In short, different provisions in the Act allow one to draw a negative implication in favor of and against applying AEDPA § 440(d) to convictions entered prior to the Act's enactment. This certainly meets the definition of ambiguous. We decline to find that Congress manifested a clear intent one way or the other. Therefore, we must proceed to the final portion of the Lindh- Landgraf test: whether the provision has a retroactive effect.

We find that § 440(d) has no retroactive effect, but is instead akin to a change in

---

statute other than § 440(d) that pertains to criminal aliens and revokes previously available discretionary relief. Admittedly, culling those provisions that are sufficiently comparable from the mass of AEDPA provisions is difficult. However, we are convinced that AEDPA §§ 435 and 441 are properly taken into consideration. The difficulty of this issue again shows the truth of Justice Souter's words, "All we can say is that in a world of silk purses and pigs' ears, the [AEDPA] is not a silk purse of statutory drafting." Lindh v. Murphy, 117 S. Ct. 2059, 2068 (1997).

prospective relief, to which the presumption against retroactivity does not apply. When petitioners committed their crimes, they were subject to criminal penalties and deportation. Eliminating discretionary relief from a deportation order hardly raises concerns about "fair notice, reasonable reliance, and settled expectations," see Landgraf, 511 U.S. at 270, that petitioners had at the time they committed their criminal acts. As the Seventh Circuit noted:

> It would border on the absurd to argue that these aliens might have decided not to commit drug crimes, or might have resisted convictions more vigorously, had they known that if they were not only imprisoned but also, when their prison term ended, ordered deported, they could not ask for a discretionary waiver of deportation.

LaGuerre v. Reno, 164 F.3d 1035, 1041 (7th Cir. 1998). Other circuits reached a similar conclusion in addressing a 1990 amendment to the INA restricting INA § 212(c) relief for certain criminal aliens. The Third Circuit explained this determination succinctly in Scheidemann v. INS, 83 F.3d 1517 (3d Cir. 1996), stating:

> In this case, the consequences of petitioner's criminal conduct were clear at the time of that conduct and they remain unchanged today. He was subject to possible criminal sanctions and deportation. The only relevant change in the law relates to the permissible scope of the Attorney General's discretion to grant relief from one of those consequences. Like statutes altering the standards for injunctive relief, this change has only a prospective impact. It is not designed to remedy the past but only to affect petitioner's future status with respect to the legality of his presence in the United States. . . . Given the facts that petitioner's pre-1987 conduct clearly subjected him to deportation as well as criminal sanctions, and that § 212(c), as it then existed, offered relief from the former only at the unfettered discretion of the Attorney General, petitioner does not, and could not, contend that his conduct was undertaken in reliance on the then current version of § 212(c).

31

Id. at 1523; see also Campos v. INS, 16 F.3d 118, 121-22 (6th Cir. 1994); De Osorio v. INS, 10 F.3d 1034, 1042 (4th Cir. 1993). We agree with the Third Circuit's analysis in Scheidemann. Petitioners had no settled expectations of discretionary relief when they committed their crimes. Discretionary relief would only operate "in futuro," and Congress' removal of the possibility of such relief does not therefore have a retroactive effect.[14]

Petitioners argue that the revocation by Congress of their right to apply for INA § 212(c) relief eliminates a defense to deportation, attaching a new disability to their past criminal conduct. Thus, they assert, their cases bear remarkable similarity with the action in Hughes Aircraft Co. v. United States ex rel. Schumer, __ U.S. __, 117 S. Ct. 1871 (1997). We disagree. Hughes involved an *qui tam* action in which the government already possessed the information regarding the alleged fraud. Prior to 1986, private parties could not bring a *qui tam* action if the government already possessed the information upon which the suit was based. The Supreme Court addressed "whether a 1986 amendment to the [False Claims Act] partially removing that bar applies retroactively to *qui tam* suits regarding allegedly false claims submitted prior to its enactment." Hughes, 117 S. Ct. at 1874. It held that the statute had a retroactive effect on pre-enactment conduct, stating that "the 1986 amendment eliminates a defense to a *qui*

_____

[14]In Sandoval, the Third Circuit distinguished Scheidemann, recognizing that the cases presented different issues. See 166 F.3d at 241. We, however, confront the Scheideman issue directly.

32

*tam* suit – prior disclosure to the Government – and therefore changes the substance of the existing cause of action for *qui tam* defendants by 'attach[ing] a new disability, in respect to transactions or considerations already past.'" Hughes, 117 S. Ct. at 1877 (quoting Landgraf, 511 U.S. at 269) (internal quotation marks omitted). It also found that "[i]n permitting actions by an expanded universe of plaintiffs with different incentives, the 1986 amendment essentially creates a new cause of action." Hughes, 117 S. Ct. at 1878. Hence, the Court refused to allow an action based on pre-1986 conduct to form the basis of an action allowable only under the 1986 amendment.

The effects of AEDPA § 440(d) differ substantially from those of the amendments in Hughes. See De Sousa, 30 F. Supp. 2d at 855 n.18; Avelar-Cruz v. Reno, 6 F. Supp. 2d 744, 753 n.4 (N.D. Ill. 1998), rev'd on other grounds sub nom. LaGuerre v. Reno, 164 F.3d 1035 (7th Cir. 1998). Hughes involved a provision that added a cause of action and removed an affirmative defense. In contrast, AEDPA § 440(d) does not eliminate a defense available to petitioners when they committed their crimes or create a new cause of action against them based on their criminal conduct. Nothing in § 212(c) suggests that "an application for a waiver is akin to a substantive cause of action." Avelar-Cruz v. Reno, 6 F. Supp. 2d at 753. The prospective, discretionary nature of § 212(c) relief distinguishes it from actual causes of action that raise concerns about fair notice and

settled expectations that undergird the presumption against retroactivity.[15]

Therefore, we hold that AEDPA § 440(d) has no retroactive effect when applied to aliens whose criminal convictions took place prior to April 24, 1996, but who had not yet applied for discretionary relief. The district courts did not error in applying INA § 212(c), as amended, to petitioners.

## V.  Equal Protection

As amended by AEDPA § 440(d), INA § 212(c) provides that discretionary relief "shall not apply to an alien who is *deportable* by reason of having committed any criminal offense" covered by certain other provisions. 8 U.S.C.A. § 1182(c) (West 1996 Supp.) (emphasis added). The BIA ruled that the plain language of this provision bars deportable aliens from applying for a waiver of deportation but does not prevent excludable aliens from pursuing discretionary relief. See Matter of Fuentes-Campos, Interim Decision 3318, 1997 WL 269368 (BIA May 14, 1997). The district courts in these four cases held that the amended § 212(c) violates equal protection because it irrationally treats similarly situated persons – deportable and excludable aliens – differently. We review questions regarding a statute's constitutionality de novo. See, e.g., United States v. Hampshire, 95 F.3d 999, 1001 (10th Cir. 1996).

The Fourteenth Amendment mandates that "[n]o State shall make or enforce any

---

[15]We recognize that the Scheidemann line of cases predates Hughes and Lindh. As our discussion above suggests, however, we do not believe the Supreme Court in Hughes and Lindh undermined the rationale in Scheidemann.

34

law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. This guarantee of equal protection applies to the federal government through the Fifth Amendment Due Process Clause, see, e.g., Schweiker v. Wilson, 450 U.S. 221, 226 & n.6 (1981), and provides that a statute shall not treat similarly situated persons differently unless the dissimilar treatment is rationally related to a legitimate legislative objective, see, e.g., Kadrmas v. Dickinson Pub. Schs., 487 U.S. 450, 457 (1988). Our review of immigration legislation is especially limited because "'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens." Fiallo v. Bell, 430 U.S. 787, 792 (1977) (quoting Oceanic Navigation Co. v. Stranahan, 214 U.S. 320, 339 (1972)). In this case, we need not determine whether deportable and excludable aliens are similarly situated because, even assuming they are, we find a rational basis for the differentiation in § 212(c), as amended by AEDPA § 440(d).

The distinction between excludable and deportable aliens found in amended § 212(c) promoted Congress' rational objective of expeditiously removing criminal aliens from the country. As the government argues, "Criminal aliens inside the United States pose a clear and present danger to the safety of the American public. In contrast, criminal aliens who are outside the United States do not pose any immediate danger to the American public and cannot enter the country unless the Attorney General first determines, in her discretion, that they may enter." Appellant's Br. (Williams) at 44-45.

35

Moreover, § 212(c), as amended by AEDPA §440(d), "creates an incentive for deportable aliens to leave the country – which is after all the goal of deportation – without their having to be ordered to leave at the government's expense." LaGuerre v. Reno, 164 F.3d 1035, 1041 (7th Cir. 1998). In essence, "[t]o induce their voluntary departure, a little carrot is dangled before them, consisting of the opportunity to seek a waiver should they seek to return to the country and by doing so trigger exclusion proceedings." Id. The preservation of discretionary relief for those excluded, while denying it to those found deportable, aids in efficiently discovering, apprehending, and deporting criminal aliens. These reasons provide a rational basis for the differing treatment of excludable and deportable aliens.[16] Hence, we hold that § 212(c), as amended by AEDPA § 440(d) and interpreted by the BIA, does not violate petitioners' equal protection rights.

## VI. Conclusion

Based on the foregoing discussion, we hold that the district courts had jurisdiction under 28 U.S.C. § 2241 to hear petitioners' habeas claims. However, we disagree that INA § 212(c), as amended by AEDPA § 440(d), violates their equal protection rights. Thus, we AFFIRM the district court's result in Palaganas-Suarez, but REVERSE the result in Jurado-Gutierrez, Daniel, and Williams and REMAND those cases for

---

[16]Petitioners place great weight on Francis v. INS, 532 F.2d 268, 273 (2d Cir. 1976), a case in which the Second Circuit found an almost identical distinction between excludable and deportable aliens violated equal protection. We are not bound by that decision and decline to follow it in this case.

proceedings consistent with this opinion.

97-1437, 98-1017, 98-1050, 98-1310, Jurado-Gutierrez, Palaganas-Suarez, Williams, and DeJesus Daniel v. Greene

**LUCERO**, Circuit Judge, Concurring.

Although I agree with the majority's result and analysis with respect to the jurisdictional and equal protection issues in this case, I write separately because of my different approach to the question of the retroactive application of AEDPA § 440(d), Pub. L. No. 104-142, 110 Stat. 1276 (1996).

The immigration-related sections of Title IV of AEDPA contain various provisions expressly providing for their prospective or retrospective application, both as to pre-Act proceedings and pre-Act convictions. These result in a proliferation of sometimes conflicting inferences, making application of statutory construction methods considerably more difficult here than it was in <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997). In light of several relevant AEDPA provisions, I ultimately conclude that the majority is correct in finding ambiguous Congress's intent with respect to the particular factual situations of the petitioners in these cases, and in proceeding to apply <u>Landgraf v. U.S.I. Film Products</u>, 511 U.S. 255 (1994), to determine whether its presumption against retroactivity applies. My reasons for finding ambiguity, however, are narrower than those of the majority. I find the reasoning of our sister circuits in confronting the similar, but legally distinct, issue of the application of § 440(d) to applications for INA § 212(c) relief in proceedings pending as of the effective date of AEDPA to be more

problematic for our result today than does the majority. Thus, I wish to explain why I believe our relatively narrow result is not inconsistent with those cases.

The majority opinion concludes that Mayers v. INS , 175 F.3d 1289 (11th Cir. 1999), Sandoval v. Reno , 166 F.3d 223 (3d Cir. 1999), Henderson v. INS , 157 F.3d 106 (2d Cir. 1998), and Goncalves v. Reno , 144 F.3d 110 (1st Cir. 1998), "overlook" ostensibly contradictory effective date provisions of other sections of AEDPA Title IV, specifically AEPDA §§ 435 and 441. Maj. Op. at 29. I disagree. Discussing the absence of an explicit effective date provision in § 440, the Third Circuit noted that "several other comparable provisions do have express effective dates," and then proceeded to discuss § 413, "Denial of Other Relief for Alien Terrorists." Sandoval , 166 F.3d at 241 (emphasis added); see also Goncalves , 144 F.3d at 128-31. I am of the view that §§ 413 and 421 are much more directly "comparable" to § 440(d) than are §§ 435 and 441. Section 413 deprives certain aliens classified as "alien terrorists" of formerly available discretionary relief. See AEDPA § 413 (amending former 8 U.S.C. § 1253(h), which provided for withholding of deportation based on determination by Attorney General). Section 421 restricts discretionary relief applicable to asylum applicants. See AEDPA § 421. These restrictions on discretionary relief are directly comparable to that of § 440(d), and therefore the negative implication stemming from their explicit effective dates clearly applies to § 440(d).

-2-

Sections 435 and 441, on the other hand, are not similarly comparable, as they do not operate to restrict a previously available form of discretionary relief, but rather respectively alter those crimes of moral turpitude serving as grounds for deportation, see § 435, and restrict the availability of collateral attacks on a deportation order, see § 441.

Given the more direct parallels between the purposes of § 440(d) and §§ 413 and 421, I believe that the presence of an explicit directive for prospective application of other, less comparable, provisions of AEDPA, does not necessarily refute the negative implication to be drawn from §§ 413 and 421, at least with respect to the application of § 440(d) to proceedings pending as of AEDPA's enactment. Only because I conclude that § 440(f) prevents the implication drawn from §§ 413 and 421 from resolving decisively the application of § 440(d) to the situation before us today—post-AEDPA proceedings implicating pre-AEDPA convictions—do I agree that congressional intent is ultimately ambiguous as to that restricted set of cases.[1] Thus, this particular ambiguity does not necessarily undermine the reasoning of Sandoval and Goncalves.

It is especially appropriate for courts to resort to legislative history for guidance when the language and structure of a statute are ambiguous. See United

---

[1] The majority correctly makes clear the cases before us do not implicate the distinct legal situation presented in Mayers, Sandoval, Henderson, and Goncalves—that of cases pending at the time of AEDPA's enactment. See Maj. Op. at 23 n.9.

States v. Donruss Co., 393 U.S. 297, 303 (1969). Therefore, I would not "decline to find that Congress manifested a clear intent one way or the other," Maj. Op. at 30, without considering the legislative history arguments against retrospective application of § 440(d). See, e.g., Goncalves, 144 F.3d at 131-33 (analyzing legislative history of § 440(d) and concluding that Congress intended § 440(d) not apply retrospectively to pending applications); Mayers, 175 F.3d 1289, 1303-04 (same); Sandoval, 166 F.3d at 241 (same); Henderson, 157 F.3d at 130 (same). Most significantly, the original Senate language making § 440(d) retroactive as to "cases pending before, on, or after such date of enactment" was removed in conference. See 141 Cong. Rec. S7559 (daily ed. May 25, 1995); see generally Goncalves, 144 F.3d at 131-32 (detailing legislative history). As noted in Sandoval, "[f]ew principles of statutory construction are more compelling than the proposition that Congress does not intend sub silentio to enact statutory language that it has earlier discarded in favor of other language." 166 F.3d at 241 (quoting INS v. Cardoza-Fonseca, 480 U.S. 421, 442-43 (1987)). In the cases before us, however, this implication is considerably weaker. The ultimately excluded Senate language spoke only to the issue of application of § 440(d) to pending proceedings, and not to the distinct issue of application of § 440(d), in

post-Act proceedings, to pre-Act conduct. [2]

Therefore, I agree with the majority that normal methods of statutory construction compel a finding of ambiguity with respect to the particular situation presented in these cases, but I find this ambiguity results solely from an implication, stemming from AEDPA § 440(f), that § 440(d) may be intended to apply to pre-Act convictions. This subsection, entitled "Effective Date," provides that (with one exception as to § 440(e)(3)), "[t]he amendments made by subsection (e) shall apply to convictions entered on or after the date of the enactment of this Act." AEDPA § 440(f). Subsection (e) operates to amend the definition of "aggravated felony" in 8 U.S.C. § 1101(a)(43), expanding the range of offenses covered within that term. Subsection 440(f) is thus an explicit provision making prospective the application of one subsection of § 440, § 440(e), as to convictions. The fact that § 440(f) makes § 440(e) operate only prospectively as applied to convictions may permit an inference that other subsections of the same statutory section are intended to apply retrospectively to convictions. Cf. Lindh, 521 U.S. at 326-27 (finding that provision for retroactive

---

[2] The additional legislative history argument discussed in Goncalves is also considerably less persuasive outside the context of pending proceedings, and thus does not offer us sufficient certainty to resolve, in this case, the tension that emerges from the structure of the statute itself. See Goncalves, 144 F.3d at 133 (noting that Congress was aware of and did not react to, at the time of amending § 440(d) in September 1996, a BIA decision providing for prospective application to pending cases, but also noting that such subsequent legislative developments are "never determinative in themselves").

application in one statutory chapter creates a negative implication for analogous chapter about whose temporal application the statute is silent); cf. De Sousa v. Reno, 30 F.Supp.2d 844, 853 (concluding that the "only way to read section 440(f), as actually drafted, to give it full effect is to conclude that Congress intended to treat past criminal convictions differently in sections 440(d) and 440(e)—i.e., section 440(d) applies to prior convictions, while section 440(e) does not"). [3] Because this implication conflicts with those of §§ 413 and 421, I agree with the majority that standard statutory construction does not allow us to derive a clear congressional intent as to the application of § 440(d), in post-Act proceedings, to pre-Act convictions.

Having concluded that legislative intent is ambiguous as to retrospective application for that narrow set of cases involving post-Act proceedings based on pre-Act criminal convictions, I agree with the majority that Lindh and Landgraf thus require us to resort to analysis of whether the provision has retroactive effect so as to invoke the traditional judicial "presumption against retroactivity." See Landgraf, 511 U.S. at 272. I further agree with the majority that this limited set of cases—where the law revokes a form of discretionary relief in post-Act proceedings, rather than imposing new consequences on the underlying

_____

[3] In light of the contrary implications of §§ 413 and 421, I am not as certain as the court in De Sousa that § 440(f) permits a conclusion of clear legislative intent, but am convinced it does permit a conclusion of ambiguous intent.

-6-

convictions—does not sufficiently implicate the concerns of "fair notice, reasonable reliance, and settled expectation" to invoke the presumption against retroactivity. Landgraf, 511 U.S. at 270.

Accordingly, I concur.