**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 13 2004**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

CRYSTAL C. CONATZER,

      Plaintiff-Appellant,

v.

MEDICAL PROFESSIONAL
BUILDING SERVICES
CORPORATION, a corporation,

      Defendant-Appellee.

No. 03-5074
(D.C. No. 02-CV-326-C)
(N.D. Okla.)

---

ORDER AND JUDGMENT [*]

---

Before **BRISCOE** and **McKAY** , Circuit Judges, and **BRORBY** , Senior Circuit
Judge.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff seeks review of the district court's grant of summary judgment for defendant on plaintiff's claims of sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2000-17, *et seq*. *See Conatzer v. Med. Prof'l Bldg. Servs., Inc.,* 255 F. Supp. 2d. 1259 (N.D. Okla. 2003). Plaintiff also appeals the district court's decision not to exercise supplemental jurisdiction over plaintiff's state law claims, which it dismissed without prejudice. *Conatzer*, 255 F. Supp. 2d. at 1271. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the grant of summary judgment *de novo*, applying the same standard as the district court. *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs*., 165 F.3d 1321, 1326 (10th Cir. 1999). We review the district court's decision not to exercise supplemental jurisdiction over plaintiff's state law claims for abuse of discretion. *Gold v. Local 7 United Food & Commercial Workers Union*, 159 F.3d 1307, 1310 (10th Cir. 1998) (quoting 28 U.S.C. § 1367(c)(3)).

We take the underlying facts from *Conatzer,* 255 F. Supp. 2d. at 1263-65, and we repeat them only as necessary to explain our decision. Briefly

-2-

summarized, plaintiff worked for defendant as a security guard. Her supervisor was Dale Woodruff. Plaintiff alleged that on two occasions Woodruff sexually harassed her and that Medical Professional Building Services Corp. (MPBS) was both vicariously liable for Woodruff's actions and negligent in allowing him to engage in this harassment. [1] The alleged incidents occurred on September 28 and October 11 or 12, 2001. The first involved a physical contact between plaintiff and Woodward described by a witness (shift supervisor Wayne Carter) as Woodruff stepping up to plaintiff, leaning against her, and rubbing against the side of her chest. *Id.* at 1264. The second incident, described by another witness, involved plaintiff bending over to pick something up, at which time Woodruff briefly placed plaintiff in a headlock with his thighs. *Id.*

Plaintiff did not register a complaint about these occurrences until October 15, 2001, when she spoke to MPBS shift supervisor, Ann Lewis. Lewis instructed plaintiff to put her complaint in writing and present it to management, which plaintiff did. The next day MPBS vice-president Tim McNulty commenced an investigation and during the following few days told Woodruff not to retaliate in any way against plaintiff.

---

[1]     Plaintiff also claimed Woodruff had made sexually inappropriate comments to her and had patted her back and arm on occasion.     *Conatzer*, 255 F. Supp. 2d. at 1263-64.

At some point during this time period, Woodruff changed plaintiff's schedule to include some work on weekends. While not as desirable to plaintiff, the schedule change did not require additional hours and, in any event, lasted only a few weeks. MPBS suspended Woodruff with pay on October 22, 2001, and ultimately terminated his employment. *Id.* at 1264.

During the course of this litigation, MPBS learned plaintiff had allowed Woodruff to falsify certain information in her employment application. MPBS issued plaintiff a written reprimand and placed her on probation for ninety days. This probation did not include any reduction in pay or hours. MPBS has taken no other disciplinary action against plaintiff. *Id.* She is presently in MPBS's employ and happy with her current job. Aplt. App. Vol. I at 160, 175.

The district court considered plaintiff's claim as solely one for a hostile work environment, inasmuch as she had offered no evidence to support a *quid pro quo* theory that Woodruff had either threatened her with unfavorable treatment if she refused to submit to his assaults or conditioned any favorable treatment on such submissions. *Conatzer,* 255 F. Supp. 2d. at 1266. The court then considered plaintiff's claim of vicarious employee liability and MPBS's available defenses as outlined in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) (*Faragher*) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) (*Ellerth*). In these cases, the Supreme Court described an employer's affirmative

-4-

defense to vicarious liability for a supervisor's conduct as requiring that the employer exercise reasonable care to prevent and to promptly correct any sexually harassing behavior. In addition, the defendant must establish that the plaintiff-employee unreasonably failed to avail herself of preventative or corrective opportunities provided by the employer or to otherwise avoid harm. *Faragher*, 524 U.S. at 807. The affirmative defense cannot be raised, however, if the harassing supervisor takes a "tangible employment action" against the subordinate employee. *Id*; *Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014, 1024 (10th Cir. 2001).

The district court first considered plaintiff's argument that MPBS was not entitled to invoke the *Faragher/Ellerth* affirmative defense because she suffered tangible employment actions. The court determined, however, that she failed to establish any tangible employment actions as a matter of law. *Conatzer*, 255 F. Supp. 2d. at 1267-68. Having determined that MPBS was entitled to assert the *Faragher/Ellerth* affirmative defense, the court found MPBS had satisfied the first prong of that defense: that MPBS had exercised reasonable care to prevent and promptly correct the harassing behavior. Plaintiff's arguments to the contrary failed because MPBS had no notice of Woodruff's harassment prior to October 15, 2001, had an existing anti-discrimination policy and complaint procedure, and promptly and effectively responded upon receipt of plaintiff's

complaint. *Id.* at 1268-70. The court further found that MPBS satisfied the second prong of the affirmative defense by establishing that plaintiff had failed to avail herself of protective or corrective opportunities provided by MPBS or to avoid harm otherwise. *Id.* at 1270. For similar reasons the court also determined plaintiff's actions for negligence failed as a matter of law. *Id.* at 1271. Finally, the court declined to exercise supplemental jurisdiction over plaintiff's state law claims. *Id.* at 1271.

On appeal, plaintiff first contends the district court erred in holding there were no tangible employment actions which would preclude MPBS's invocation of the *Faragher/Ellerth* affirmative defense. She claims there were "probably as many as [four] such tangible employment actions" following the September 28 incident, which she lists as (1) the October 11 or 12 harassing incident; (2) Woodruff's change in her work schedule; (3) her unpaid medical leave following the incidents; and (4) the subsequent disciplinary probation imposed for having altered her job application. Aplt. Br. at 12.

Her first listed "action" was, as explained by the district court, not an employment action at all, but rather the second incident of alleged sexual harassment. Plaintiff fails to explain how this separate act of harassment falls within the definition of a tangible employment action, which is typically defined as a "significant change in employment status, such as hiring, firing, failing to

promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761. Nor does combining that incident with her unpaid medical leave some weeks later transform it into a tangible employment action.

The district court adequately explained why the change of schedule did not constitute a tangible employment action, either. Plaintiff admitted that the topic of a schedule change was discussed before the October 15 report of harassment. Aplt. App. at 183-84. She further admitted that the reason for the shift change was that other employees with more seniority had complained that she was receiving preferred treatment because of her schedule. *Id.* Moreover, the schedule change did not reduce her hours or pay and lasted only a few weeks.

She next argues that she suffered a tangible employment action because of her "psychologist required but unpaid medical leave to recover" from the incidents with Woodruff. Aplt. Br. at 12. She overlooks the fact, however, that the medical leave was granted at her request and occurred several weeks after Woodruff was removed from the workplace. She thus fails to support her claim that this absence constituted a tangible employment action.

Lastly, she argues that the ninety-day probation and written reprimand was a tangible employment action criteria. The reprimand, which was not accompanied by suspension, loss or reduction of pay, or loss of benefits, resulted

from plaintiff's admission that she had falsified her job application. Plaintiff fails to explain how this action constituted a significant change in her employment status, nor does she offer any authority for her assertion that this action by MPBS was "illegal." *See* Aplt. Br. at 19. Finally, although she sprinkles vague references to "retaliation" in her brief, *see* Aplt. Br. at vii, 15-19, 25, she concedes she waived any retaliation claim. *Id.* at vii n.1; *see also* Aplt. App. Vol. I at 130 (plaintiff's response to MPBS's motion for summary judgment). Thus, the reprimand does not constitute a tangible employment action. In any event, it is a tangible employment action taken by the harassing supervisor against the plaintiff employee that forecloses reliance on the affirmative defense. *See Harrison*, 248 F.3d at 1024. MPBS was therefore entitled to invoke the affirmative defense to its liability for Woodruff's actions.

The district court further correctly determined that MPBS's stated policy and grievance procedures were adequate and that once plaintiff commenced the grievance procedure by delivering a written complaint to management, the alleged harassment ended immediately. Plaintiff presented her complaint to McNulty on October 15, and he immediately launched an investigation. Although she complains that Woodruff was not suspended until the following Monday, October 22, she admitted she did not see him after October 18. Aplt. App. Vol I. at 188. McNulty interviewed witnesses to the incidents between plaintiff and

Woodruff. He interviewed Woodruff, specifically instructing Woodruff to refrain from harassing plaintiff. Aplee. Supp. App. at 41-42. Although he ultimately did not find sufficient evidence to determine Woodruff's conduct constituted sexual harassment, Woodruff was nevertheless terminated for inappropriate behavior. *Id.* at 42.

Nor does the record support plaintiff's argument that because Carter witnessed the September 28 incident, MPBS was obligated to take preventative measures prior to plaintiff's October 15 formal complaint. Plaintiff did not complain to Carter, nor is there any indication that what Carter observed was anything other than an isolated incident. Thus, the district court correctly determined that MPBS exercised reasonable care to prevent harassment and to promptly and appropriately respond to plaintiff's complaint.

Likewise, the court correctly found that plaintiff had failed to avail herself of preventative or corrective opportunities. She concedes that MPBS's handbook prohibits sex discrimination, Aplt. Br. at 24. Based on her previous employment with other companies, she understood that sexual harassment is illegal; she had also received training in the complaint process. Aplt. App. Vol. I at 105.

MPBS has posted in its break rooms, including the break room directly behind the security office, statements that harassment on the basis of sex is prohibited by law, Aplee. Supp. App. at 41, and plaintiff passed by these bulletin

boards several times a day. Aplt. App. at 178. Nonetheless, she waited nearly three weeks after the first incident to register her complaint. Absent an adequate explanation for this delay, this inaction by plaintiff constitutes an unreasonable failure "to take advantage of any preventative or corrective opportunities provided by the employee or to avoid harm otherwise." *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765.

Finally, in light of plaintiff's reliance on the same facts and arguments to support her theory that MPBS was negligent in handling her complaint, *see* Aplt. Br. at 42, we uphold the district court's determination on this issue as well. *See Conatzer*, 255 F. Supp. 2d. at 1270-71. Because the district court properly granted summary judgment to MPBS, the court did not err in its award of costs to MPBS. *See* Fed. R. Civ. P. 54(d)(1).

To the extent plaintiff claims error in the district court's decision not to retain supplemental jurisdiction over her state law claims, *see id.* at vii, she has presented no argument on this issue and it is therefore waived. *See City of Stilwell v. Ozarks Rural Elec. Co-op. Corp.*, 166 F.3d 1064, 1068 n.4 (10th Cir. 1999) (issue listed but not addressed is waived). The same holds for her attorney's purported appeal of "any District Court decision to impose sanctions." Aplt. Br. at vii.

For these and substantially the reasons stated by the district court in

*Conatzer* , 255 F. Supp. 2d. 1259, the judgment is     **AFFIRMED** .

Entered for the Court


Monroe G. McKay
Circuit Judge